[Crim. No. 6132. Second Dist., Div. One. Apr. 21, 1958.]

THE PEOPLE, Respondent, v. ROBERT WILLIAM WHITE, Appellant.

John H. Marshall for Appellant.

Edmund G. Brown, Attorney General, and Albert Bianchi, Deputy Attorney General, for Respondent.

LILLIE, J.—Robert William White was accused by information of possession of heroin in violation of section 11500 of the Health and Safety Code of the State of California. Having waived his right to a trial by jury defendant submitted the matter to the court on the transcript of the preliminary hearing. Defendant moved to suppress the evidence, People's Exhibit 1, on the ground that it had been obtained as the result of an unlawful search and seizure. The court denied the motion and after hearing all the evidence found the defendant guilty as charged. Defendant's motion for a new trial and application for probation were denied and he

was sentenced to the state prison for the term prescribed by law.

Defendant seeks a reversal of the judgment of conviction on the ground that the trial court erred in denying defendant's motion to suppress the evidence. He urges that the search of his room following his arrest elsewhere was not a proper incident of his arrest. People's Exhibit 1 to which defendant's motion to suppress was directed and which is the subject of his first point on appeal consists of a Pall Mall cigarette package containing a green balloon filled with 7½ grams of heroin. It was found by the arresting officer in a box in plain sight on a chair in defendant's room located at 1610 West 27th Street, Los Angeles, California.

Around 9 p.m. on June 24, 1957, Officer Charles J. Fatuzzi of the Narcotics Division of the Los Angeles Police Department received a telephone call from a confidential informant who told him that the defendant was at a hot dog stand at Normandie and Adams Boulevard and that he had in his possession approximately twenty $10 papers of heroin. He further advised the officer that the defendant lived at 27th Street and Raymond and had heroin in his room which was located in the upper right portion of the building. At approximately 1:30 a.m. the next day, four and one-half hours later, another informant advised the officer that defendant was in the area of 27th and Normandie selling heroin and that he then had in his possession ten $10 papers.

In reliance upon the information obtained from these informants Officer Fatuzzi and another officer went to Normandie and Adams Boulevard where they kept the hot dog stand and the defendant under surveillance. They saw White in the company of a known addict walk to 27th Street and go south on Kenwood. During this time they observed the defendant talk to several people and engage in certain conduct which in the opinion of the officer amounted to selling of narcotics. At 2 a.m., about one-half hour after he received information concerning the defendant from the last informant, Officer Fatuzzi arrested the defendant and searched him. He took from him an open pocket knife but found no narcotics in his possession. Taking him to his room at 1610 West 27th Street the officer searched it and found a cardboard box containing People's Exhibit 1 on a chair by the bed. Asked if it was all there was in the house the defendant replied, "You have it all. There is no more here. I am not a real big peddler like you think."

The defendant testified that he had lived at 1517 Adams Boulevard and was in the process of moving to the 27th Street address; that he had last been in the room only hours before his arrest; that he knew nothing about the heroin found in his room; that he thought it was tooth powder and that it did not belong to him.

Appellant's first point is that the heroin found in his room and introduced against him at the trial as People's Exhibit 1 was illegally obtained. His real contention is that his arrest was unlawful because the officers did not have reasonable and probable cause therefor. There is no claim by the People that the officers made the arrest or searched the premises with a warrant.

The rule of arrest without a warrant is almost too common for the citation of authority. ■ A peace officer may make an arrest without a warrant when the person arrested has committed a felony, although not in his presence, when a felony has in fact been committed and the arresting officer has reasonable cause for believing the person arrested to have committed it (Pen. Code, § 836). ■ What are reasonable grounds, however, is always a question of fact. ■ It is well established that an arrest without a warrant may be made by police officers acting solely on advice of a reliable confidential informant (*People* v. *Dean*, 151 Cal.App.2d 165 [311 P.2d 85]). In such a case there are two matters the trial court must determine from the evidence before it can conclude that the arrest without a warrant was the result of reasonable reliance on a confidential informant—first, whether the informant was reliable and, second, whether the officer relied on the information in making the arrest. (*People* v. *Burke*, 47 Cal.2d 45 [301 P.2d 241]; *People* v. *Dean, supra*.) ■ ''It is the officer's credibility and the soundness of his reasons for relying upon his informant that must impress the court before it can determine that the officer was authorized to make the arrest.'' (*People* v. *Dean, supra*, p. 167.)

■ Evidence that the officer's reliance on the information was reliable may consist, among other things, of the identity of the informant and the officer's past experience with him (*Willson* v. *Superior Court*, 46 Cal.2d 291 [294 P.2d 36]).

■ An officer, in arresting without a warrant, is justified in acting solely upon information from a confidential informant where he is known to the officer and is believed by him to be trustworthy and reliable (*People* v. *Dean, supra*; *People* v. *Vice*, 147 Cal.App.2d 269 [305 P.2d 270]; *Trowbridge* v.

*Superior Court,* 144 Cal.App.2d 13 [300 P.2d 222]; *People v. Gonzales,* 141 Cal.App.2d 604 [297 P.2d 50]).

In the instant case two confidential informants were involved in the defendant's arrest. The one who called the officer at 9 p.m. on the night before the arrest is an addict well-known to him for two years. In the past he had given the officer information upon which he made five narcotics arrests, all resulting in conviction. This past experience with informant established him in the mind of the officer as trustworthy insofar as information of this kind was concerned and it appears that the officer was fully justified in relying upon that which he gave concerning the defendant. It was he who gave the officer a description of the defendant and told him where he could be found, what he was then doing, where he lived, and that he had heroin in his possession and in his room. The second informant, although not personally known to the officer, called him four and one-half hours later and gave him substantially the same information with the exception of the location of the defendant's room and that narcotics could be found there. The similarity of this information with that given by the informer known and trusted by the officer lends some credence to the facts related by him to Officer Fatuzzi. In view of this the officer had good reason to rely upon that given to him by this informant.

Appellant contends that because defendant had no narcotics in his possession when arrested this fact renders the information given by the informants unreliable and worthless. There are two answers to this contention: First, the arrest took place five hours after the first informant called the officer and told him defendant had twenty $10 papers of heroin on his person and only one-half hour after the second informant called and told him defendant had 10 papers of $10 heroin in his possession. The officers found defendant at the location given to them by both informants and where the latter informant told him the defendant was selling heroin. Furthermore, the officer kept defendant under surveillance for one-half hour before his arrest and observed him talk to several people and carry on various activities which in the mind of the arresting officer constituted the making of narcotics sales. Defendant during this time was in the company of a known narcotic addict. It is reasonable to believe from this evidence that although five hours before his arrest the defendant started out with 20 papers of heroin and had 10 left one-half hour prior to his arrest, that he disposed of them

to others he was seen talking to during this time and that by the time he was arrested he had disposed of the entire amount heretofore in his possession. ▆ Second, the fact that later it was discovered that the informer was mistaken as to some part of the testimony he gave the officer does not make his reliance thereon unreasonable as long as the officer knows his informant and that he is reliable.

In concluding here that the arrest of defendant was in reliance on information of a reliable confidential informant and that the trial court did not abuse its discretion in so holding, we point to the record which clearly shows that the officer had sufficient knowledge and information concerning his informants which would justify reasonable reliance on them and that he presented these facts to the trial judge who determined from the credibility of the officer and the nature of the facts offered that he was sound in relying on the informers. Considering the evidence as a whole, we find that the officer acted with reasonable and probable cause in arresting the defendant; that no abuse of the court's discretion appears in the record and that the trial court was justified in concluding that the arrest was lawful, and in admitting People's Exhibit 1 as legally obtained evidence.

Appellant's second point goes to the search of the defendant's room after his arrest on the street. He claims that such a search was not a proper incident of his arrest. ▆ In urging this point defendant ignores the clear evidence in the record showing a free and voluntary consent on the part of the defendant to search his room; and the well-known rule that it is not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest when the search is made with defendant's consent. In *People* v. *Burke, supra,* the defendant urged a similar point and the Supreme Court at page 49, stated: "It is not necessary here, however, for the People to show that the search and seizure were reasonable as incident to proper arrest, for they showed that defendant freely consented to the search of his apartment which disclosed the evidence which defendant has since claimed was illegally obtained." In that case, the officer said to the defendant, "You don't mind then if we search your apartment do you?" and the defendant answered, "No, go ahead." Whether in a particular case consent was voluntarily given is a question of fact to be determined in the light of all the circumstances (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]; *People* v.

*Michael,* 45 Cal.2d 751 [290 P.2d 852]). The evidence of consent in the instant case is even stronger than that in *People* v. *Burke, supra.* Here the defendant on three separate occasions after his arrest told the officers they could search the room in which the narcotics were found. After searching defendant on the street, the officers asked him if they could search his room to which he answered, ''Certainly. Go ahead.'' Upon being asked where he lived, he told them, ''at 1527 West Adams.'' Having been previously told by informant of the location of defendant's residence the officers drove him directly to 1610 West 27th Street, where officers again asked defendant if he minded a search of his room, to which he replied, ''Go ahead. I don't live here anyway.'' Taking two keys from defendant's pocket, the officer with one opened the front door of the building whereupon defendant said, ''I don't live here,'' and the following conversation occurred between them:

(Officer) Q. ''Then you don't mind if we search?''

(Defendant) A. ''Certainly. Go ahead. I don't live here.''

Although during this time defendant may have hoped to mislead the officers by denying he lived at that location, he nevertheless on three occasions told them they could search the room. The officers then located the landlady who identified the defendant as the person to whom she rented room Number 1 on Sunday morning, June 23rd. It was in this room the heroin was found. On the stand defendant admitted that room Number 1 was his room and that he had last been in it only hours before his arrest. We conclude that the trial court was justified in finding a voluntary consent of the defendant to a search of his room.

 The fact that the defendant was under arrest at the time he consented to the search does not *per se* make such consent involuntary. (*People* v. *Lujan,* 141 Cal.App. 2d 143 [296 P.2d 93].) However, it is clear that such a fact may be one of the factors the court may consider in determining whether consent was freely given. ''The fact that defendant is under arrest at the time of giving consent is one of the factors, but not the only one, to be considered in determining whether it was freely given; the trial judge who sees and hears the witnesses is best able to pass on the matter.'' (*People* v. *Robinson,* 149 Cal.App.2d 282, at p. 287 [308 P.2d 461].) Mere arrest in itself is not such an assertion of authority as to make an otherwise free consent involuntary. The defendant testified briefly that one of the

officers hit him in the stomach while the other ran up to the room. The officer denied hitting defendant in the stomach and the matter was not further developed by the defendant. The court in *People* v. *Michael*, 45 Cal.2d 751, at page 753 [290 P.2d 852], stated: "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances." The question is one of fact to be decided by the judge who must determine and declare as a matter of law whether the evidence secured through the search is admissible. (*People* v. *Gorg, supra; People* v. *Burke, supra.*)

We find nothing in the record pointing to an abuse of the trial court's discretion in finding that the search in question was the result of defendant's voluntary consent, in declaring that the search was a proper incident of defendant's arrest and that People's Exhibit 1 secured through the search was admissible.

The judgment is affirmed.

White, P. J., concurred.

FOURT, J.—I concur in the judgment: This is another case arising in Los Angeles county where the defendant was charged in the information with a prior conviction of a narcotic offense, and a certified copy of the commitment in such prior case was received in evidence without objection. Although the defendant testified in his own behalf, he offered no evidence with reference to the certified copy of the commitment and his attorney stipulated that the person named in the commitment was the defendant.

At the time of the hearing of the defendant's application for probation the judge said, "The Court makes no finding as to the question of priors." Sentence was then imposed upon the defendant as though he were a first offender, contrary to the clear wording of the statutes made and provided in such cases. See concurring opinion in *People* v. *Rixner*, 157 Cal. App. 387, at pages 392-393 [321 P.2d 91], and opinion in *People* v. *Barbera*, *(Cal.App.) 323 P.2d 815.

Appellant's petition for a hearing by the Supreme Court was denied June 17, 1958.

---

*A hearing was granted by the Supreme Court on June 4, 1958. The final opinion of that court is reported in 50 Cal.2d —— [328 P.2d 973].