[Crim. No. 6583.   Second Dist., Div. Two.   July 29, 1959.]

THE PEOPLE, Respondent, v. PETER T. VELIS, Appellant.

Peter T. Velis, in pro. per., for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Marvin L. Part, Deputy Attorney General, for Respondent.

FOX, P. J.—Defendant was convicted of possession of heroin in violation of section 11500, Health and Safety Code. He appeals from the judgment and from the order denying his motion for a new trial.

Officer Virgin, of the Los Angeles Police Department, received information from a confidential informant, whose help had resulted in previous narcotic arrests and convictions, that traffic in narcotics was being carried on at 804 Bartlett Street. The informant took the officer to the address where defendant lived. He told the officer that the defendant was dealing in narcotics and that his operations were as follows: that persons would either drive or walk up to the house, either call to the defendant or honk a horn, and then go down the street and wait for him, and he would then come down from his house, walk to the car or to the person, take their order, and return to the house, and, when he returned, he would have the narcotics with him with which to fill the order.

On the evening of June 26, 1958, Officers Virgin and Cook went to this location shortly after dark and took a vantage point from which they observed a vehicle come to the house, honk the horn, and then move on down the street. Defendant thereupon approached this vehicle, talked to the passenger in the car, and returned to the house. When he went into the house, the officers took a position near the corner of the house. As defendant came out a few moments later he was placed under arrest, although he attempted to run. During a struggle that ensued he swallowed some object. The officers asked what he had swallowed. He stated that he had swallowed "four caps." He did not have any narcotics on his person. Upon being taken back into the house, the officers inquired "where the rest of it was hidden." He said it wasn't "hidden in the house but on the outside." Defendant then took the officers outside and indicated that it was hidden underneath a pile of rubbish. A search revealed nothing; defendant indicated he was just attempting to fool them. He was then returned to

the house and again asked where the narcotics were. He took the officers to the bathroom and pointed out a small piece of tissue paper over the ledge of the door of the bathroom. It was found to contain one capsule of a whitish powder. Further search of the ledge revealed another such capsule. Upon searching the rear bedroom, the officers found a latex balloon which contained approximately 50 similar capsules. The officers then inquired whether that was all of his stock. He said "No," and then took them to a bedroom in the front portion of the house and said, "In a sock in the top drawer you'll find the rest of it." He pointed out a brown sock, from which the officers removed a latex bag containing 15 capsules. Examination by experts revealed that the whitish powder contained in these capsules was heroin.

When defendant was interrogated at the Police Building he told the officers that he "had been dealing only since he got out of the joint and just enough to supply his own habit; that he wasn't a big dealer."

In seeking a reversal defendant contends that (1) the evidence upon which he was convicted was obtained through an illegal search and seizure and therefore was inadmissible; (2) that the trial judge was guilty of prejudicial misconduct in that he was biased and prejudiced because of the nature of the charge against him; and (3) that he assumed a fact not in evidence.

■ In *People* v. *Montes*, 146 Cal.App.2d 530, this court stated, at page 532 [303 P.2d 1064] : "A valid arrest may be made solely by reason of information communicated by a reliable informant." In accord are *People* v. *Penson*, 148 Cal. App.2d 537, 539 [307 P.2d 24] ; *Lorenzen* v. *Superior Court*, 150 Cal.App.2d 506, 509 [310 P.2d 180]. See also *Willson* v. *Superior Court*, 46 Cal.2d 291, 294 [294 P.2d 36] ; *People* v. *Boyles*, 45 Cal.2d 652, 656 [290 P.2d 535]. This rule governs in the instant case.

■ The record shows that the officers had received information from a known source, which on former occasions had proved to be reliable. The informant not only gave the address where the defendant lived and from which he plied his trade, but actually pointed out the premises to the officer. He also explained in detail the defendant's technique of operation. When the officers observed the actions on the part of a motorist and the defendant to be identical with the mode of operations related by the informant, they had reasonable grounds to believe that defendant was in the process of taking

and filling an order for narcotics. Defendant's arrest was therefore lawful. (Cases *supra*.) ▇ As an incident to such an arrest it was proper for the officers to search the premises where he reportedly kept his supply, and from which defendant had just emerged, and seize evidence which demonstrated that he was violating the narcotics law. (See *In re Dixon*, 41 Cal.2d 756, 761-762 [264 P.2d 513].) The heroin thus obtained was properly admissible in evidence. (*People* v. *Coleman*, 134 Cal.App.2d 594, 598-599 [286 P.2d 582].)

There is no foundation whatever in the record for defendant's assertion that the trial judge was biased and prejudiced against him because of the nature of the charge for which he was being tried.

▇ Defendant's contention that the court assumed a fact not in evidence is based on defendant's statement to the police when he was arrested, that he had swallowed "four caps," and the court's later remark that he swallowed "some heroin." Defendant argues that the record does not disclose the contents of the "four caps" and that the court's conclusion that it was heroin is pure conjecture. The comment of the trial judge was after the chemist had identified the contents of the capsules found in defendant's home as being heroin. The term "cap," of course, is simply an abbreviation for "capsule." In fact, this term was used by the arresting officer in referring to the first capsule of heroin found in defendant's premises.

In the light of defendant's attempt to avoid arrest and his desperate act in disposing of the "four caps" in his possession, and the testimony that the caps found on defendant's premises contained heroin, it was reasonable for the trial court to infer that the caps defendant swallowed were contraband. It is therefore apparent that there was ample justification for the trial judge's remark.

▇ In his reply brief, defendant argues that his constitutional rights were violated because the informant was not produced. The complete answer to this argument is that no such request was made on behalf of defendant in the trial court. This point is specifically covered by *Priestly* v. *Superior Court*, 50 Cal.2d 812, 819 [330 P.2d 39]. The court stated: "A defendant cannot raise the problem of nondisclosure in the appellate court when he did not seek disclosure at the trial or preliminary hearing or did not move to strike the testimony on a refusal to disclose [citations]."

Defendant had a fair trial and we find no basis whatever for reversing the conviction.

The judgment and order are affirmed.

Herndon, J., concurred.